## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

IN RE EYEWEAR ANTITRUST                    No. 23-cv-3065 (KMM/JFD)
LITIGATION

This Document Relates To:
All Cases

## ORDER ON DEFENDANTS' MOTION TO TRANSFER

In these consolidated putative nationwide class actions, Plaintiffs allege that Defendants engaged in anticompetitive conduct causing consumers to overpay for eyewear. Before the Court is the Defendants' motion to transfer the proceedings to the Southern District of New York pursuant to 28 U.S.C. § 1404(a). For the reasons that follow, the Defendants' motion is granted.

### BACKGROUND

#### *The Parties and Their Locations*

Defendants are manufacturers and distributers of eyeglasses, sunglasses, and corrective lenses. *E.g.*, *Morgan v. EssilorLuxottica S.A., et al.*, No. 23-cv-3065 (KMM/JFD), Doc. No. 1 ¶ 1 (D. Minn. Oct. 3, 2023) ("*Morgan* Compl.").[1] Plaintiffs allege that Defendants constitute an "international, vertically integrated, corporate conglomerate," and they "own or control an estimated 80% of the major brands in the

---

[1] Though these cases have been consolidated, no consolidated amended complaint has yet been filed.

global market for eyeglasses and sunglasses." *Morgan* Compl. ¶ 5. Defendants have allegedly taken over competitors and used exclusive licensing and distribution agreements to exert monopolistic power over the consumer eyewear market to prevent competition and fix prices. *See generally id.* ¶¶ 1–8.

None of the Defendants are based in Minnesota. Instead, as indicated in the list below, Defendants have their principal places of business throughout Europe and the United States:

1. EssilorLuxottica S.A. (France);
2. Luxottica Group, S.p.A (Italy);
3. Essilor International SAS (France);
4. GrandVision BV (Netherlands);
5. EssilorLuxottica USA Inc. (alleged to be Delaware, but currently New York);
6. EssilorLuxottica America SAS (formerly Luxottica U.S. Holdings Corp.) (alleged to be New York, but currently France);
7. Essilor Laboratories of America Holding Co., Inc. (alleged to be Delaware, but currently Texas);
8. Essilor Laboratories of America, Inc. (Texas);
9. Luxottica of America Inc. (Ohio);
10. Essilor of America, Inc. (Texas);
11. Frames for America, Inc. (Texas);
12. For Eyes Optical Company, Inc. (Florida);
13. Costa Del Mar, Inc. (Florida);
14. Oakley, Inc. (California);
15. EyeMed Vision Care, LLC (Ohio); and
16. Vision Source, LLC (formerly Vision Source, LP) (Texas).

Corrected Table 1 (Doc. 108-1).

Although Defendants' headquarters are found in places around the United States and in Europe, they present evidence that "Defendant EssilorLuxottica USA Inc. has its principal place of business" in New York. *In re Eyewear Antitrust Litig.*, MDL No. 3091,

Doc. No. 1-3 ¶ 3 (J.P.M.L. Nov. 1, 2023) ("Lee Decl.").[2] Further, Defendants show that "[c]ertain [JPML] Moving Defendants' primary U.S.-based marketing, strategy, and retail sales operations are located in New York. For instance, Defendants Luxottica of America Inc. and For Eyes Optical Company each have their primary U.S.-based marketing, strategy, and retail sales operations in New York." Lee Decl. ¶ 4. "Likewise, New York City is an important office location for many [JPML] Moving Defendants. Many of [JPML] Moving Defendants' U.S. Leaders are based in New York City or visit New York City regularly." Lee Decl. ¶ 5.

The Plaintiffs are from Minnesota, California, and New York. Across the eight consolidated actions, there are ten named Plaintiffs and putative class representatives. Six of them are Minnesota residents: Michelle Morgan, Monet Jonas, Brad Hoag, Rebecca Froelich, Tara Foster, and Peter Brown. The Minnesota Plaintiffs have filed four of the eight cases—Ms. Jonas, Mr. Hoag and Ms. Froehlich are co-plaintiffs in the same action.

Two of the named Plaintiffs and potential class representatives are California residents: Fredrick Rozo and Isha Fathmath. And two of the named Plaintiffs and potential class representatives are New York residents: Jared Ristau and Pamela Ringgold.

---

[2] In support of their motion to transfer, Defendants rely on the Declaration of Belinda Lee, which was filed before the Judicial Panel on Multidistrict Litigation ("JPML"). In the JPML, the Lee Declaration was submitted on behalf of Costa del Mar, Inc., Essilor of America, Inc., EssilorLuxottica America SAS, EssilorLuxottica USA Inc., EyeMed Vision Care, LLC, For Eyes Optical Company, Frames for America, Inc., Luxottica of America Inc., Oakley, Inc., and Vision Source, LLC. Lee Decl. ¶ 1. In that context, the Lee Declaration referred to these entities as the "Moving Defendants," which is a term the Court modifies to "JPML Moving Defendants" where referring to the procedural history of these matters.

Nine Plaintiffs brought their cases on behalf of putative nationwide classes of "Direct Purchasers" of eyewear. Ms. Ringgold seeks to represent a nationwide class of "Indirect Purchasers." The Direct Purchaser Plaintiffs are individuals in the United States who directly purchased eyewear from any of EssilorLuxottica's proprietary brands or fashion house brands from EssilorLuxottica's retail outlets. As the name implies, Indirect Purchaser Plaintiffs are persons who purchased Defendants' eyewear indirectly—i.e., from some other source.

### *Procedural History*

These cases did not all originate in the District of Minnesota. Some were filed in other districts. Some parties with ties to New York who had been named as defendants were dismissed after the Defendants asked the JPML to consolidate the proceedings in the Southern District of New York. Eventually, however, Plaintiffs coordinated the filing of all the proceedings in this District.

Isha Fathmath filed the first lawsuit in the United States District Court for the Northern District of California on July 21, 2023. *Fathmath v. EssilorLuxottica S.A. et al.*, No. 3:23-cv-3626, Doc. No. 1 (N.D. Cal. July 21, 2023) ("Original *Fathmath* Compl."). The *Fathmath* complaint named forty-nine Defendants. Along with fifteen EssilorLuxottica entities, the complaint named twenty-three "IP Licensors" and eleven "Eyewear Manufacturers." Several of these IP Licensors and Eyewear Manufacturers are based in Italy, France, the United Kingdom. Within the United States, nineteen of these entities have their principal places of business in Connecticut, New York, and New Jersey. Original *Fathmath* Compl. ¶¶ 26, 28, 30, 32, 34, 36, 39, 41–42, 44–48, 51, 53, 55, 57, 59.

On October 3, 2023, Morgan filed a similar action here, and on October 5, 2023, Jonas, Hoag, and Froehlich did the same. *Morgan* Compl.; *Jonas et al. v. EssilorLuxottica S.A. et al.*, No. 23-cv-3082 (KMM/JFD) (D. Minn. Oct. 5, 2023). On October 20, 2023, an Illinois resident filed a similar case in the United States District Court for the Northern District of Illinois. *Brown v. EssilorLuxottica S.A. et al.*, No. 1:23-cv-15176 (N.D. Ill. Oct. 20, 2023). On November 10, 2023, a New Jersey resident filed another related action in the Northern District of Illinois. *Udovich v. EssilorLuxottica S.A. et al.*, No. 1:23-cv-15854 (N.D. Ill. Nov. 10, 2023).

Facing suits in several districts, on November 1, 2023, the JPML Moving Defendants filed a motion with the JPML to transfer all the actions to the Southern District of New York for coordinated and consolidated pretrial proceedings. *In re Eyewear Antitrust Litig.*, MDL No. 3091, Doc. No. 1 (J.P.M.L. Nov. 1, 2023). The JPML Moving Defendants also indicated that as an alternative to the Southern District of New York, centralizing the cases in the Northern District of Illinois (Chicago) would be appropriate. *Id.*, Doc. No. 1-1 at 15.

On November 22, 2023, Plaintiffs in the *Fathmath*, *Morgan*, *Jonas*, and *Brown* (Ill.) cases responded to the JPML Moving Defendants' motion to transfer the proceedings to the Southern District of New York. *In re Eyewear Antitrust Litig.*, MDL No. 3091, Doc. No. 57 (J.P.M.L. Nov. 22, 2023). These Plaintiffs explained that they had made the Defendants aware that they were already working toward the voluntary transfer and coordination of these actions in the District of Minnesota, and they took the position that

this District is a more convenient and appropriate forum than the Southern District of New York. *Id.*

Ms. Foster then filed her case here in the District of Minnesota on November 29, 2023. *Foster v. EssilorLuxottica S.A. et al.*, No. 23-cv-3662 (KMM/JFD), Doc. No. 1 (D. Minn. Nov. 29, 2023).

On December 5, 2023, the plaintiff in *Fathmath* dismissed the thirty-four IP Licensors and Eyewear Manufacturers as defendants, including the nineteen entities that are based in New York, New Jersey, and Connecticut. *In re Eyewear Antitrust Litig.*, MDL No. 3091, Doc. No. 68 (J.P.M.L. Dec. 22, 2023). In support of their motion before the JPML, the JPML Moving Defendants had emphasized that several of these previously named parties have a principal place of business in New York. *Id.*, Doc. No. 1-1 at 11 & n.2. The *Foster* Plaintiff weighed in before the JPML and suggested that the *Fathmath* dismissal of the entities based in and around New York undermined any request for centralization of the litigation in the Southern District of New York. *Id.*, Doc. No. 63 at 4 (arguing that the dismissal "fundamentally altered the collective geography of entities involved in the Related Actions, undercutting New York as a preferred venue of convenience").

On December 15, 2023, Mr. Ristau (a New York resident) and Mr. Rozo (a California resident) filed their related actions in the District of Minnesota. *Ristau v. EssilorLuxottica S.A. et al.*, No. 23-cv-3823 (KMM/JFD), Doc. No. 1 (D. Minn. Dec. 15, 2023); *Rozo v. EssilorLuxottica S.A. et al.*, No. 23-cv-3822 (KMM/JFD), Doc. No. 1 (D. Minn. Dec. 15, 2023).

The JPML Moving Defendants filed a reply in support of their motion with the JPML on January 19, 2024. *In re Eyewear Antitrust Litig.*, MDL No. 3091, Doc. No. 81 (J.P.M.L. Jan. 19, 2024). That same day, the Plaintiffs in the *Brown* and *Udovich* cases that were pending in the Northern District of Illinois voluntarily dismissed their actions. *Id.*, Doc. No. 82 (J.P.M.L. Jan. 23, 2024). The Plaintiff in *Fathmath* voluntarily dismissed her action on January 23, 2024 as well. *Id.* Because all of the remaining related actions were pending in the District of Minnesota at that point, the JPML Moving Defendants withdrew their motion to transfer before the JPML on January 23, 2024. *Id.*, Doc. No. 83 (J.P.M.L. Jan. 23, 2024).

On January 24, 2024, Ms. Ringgold filed the Indirect Purchaser action in the Southern District of New York. *Ringgold v. EssilorLuxottica S.A. et al.*, No. 7:24-cv-510, Doc. No. 1 (S.D.N.Y. Jan. 24, 2024). On January 31, 2024, the *Fathmath* case was re-filed in the District of Minnesota. *Fathmath v. EssilorLuxottica S.A. et al.*, No. 24-cv-260 (KMM/JFD), Doc. No. 1 (D. Minn. Jan. 31, 2024). On February 6, 2024, the *Ringgold* case was voluntarily dismissed in the Southern District of New York and re-filed in the District of Minnesota later that day. *Ringgold v. EssilorLuxottica S.A. et al.*, No. 24-cv-349 (D. Minn. Feb. 6, 2024). As a result, there were eight separate related putative class actions pending, all filed in the District of Minnesota.

On March 6, 2024, this Court consolidated those eight actions. Consolidation Order (Doc. 48). On March 8, 2024, Defendants moved to transfer venue to the Southern District of New York. Mot. to Transfer (Doc. 79).

***Non-Party Witnesses***

The IP Licensors and Eyewear Manufacturers that were dismissed from the original *Fathmath* complaint are all alleged to have entered anticompetitive licensing and sales agreements with Defendants across the eight complaints in these cases. *Morgan* Compl. ¶¶ 56–57; *Jonas* Compl. ¶¶ 69–76, 81–84; *Foster* Compl. ¶¶ 63–64, 70–71; *Rozo* Compl. ¶¶ 67–74, 79–82; *Ristau* Compl. ¶¶ 56–57; *Fathmath* Compl. ¶¶ 42–50, 58–63; *Ringgold* Compl. ¶¶ 140, 143–44; *Brown* Compl. ¶¶ 60–72. Fifteen of these entities are based in Europe. Nineteen are based in the "New York area," which includes New York, New Jersey, and Connecticut.[3]

Below is the list of thirty-four non-party co-conspirator Eyewear Manufacturers and IP Licensors, along with the asserted location of their operations.

<u>Europe</u>

1. Brunello Cucinelli S.p.A. (Italy)
2. Bulgari S.p.A. (Italy)
3. Burberry Group plc (UK)
4. Chanel Ltd (UK)
5. Dolce & Gabbana S.r.l. (Italy)
6. Ferrari S.p.A. (Italy)
7. Gianni Versace S.r.l. (Italy)
8. Giorgio Armani S.p.A. (Italy)
9. Prada S.p.A. (Italy)
10. Kering S.A. (France)
11. Kering Eyewear S.p.A. (Italy)

---

[3] Based on the allegations regarding in the original *Fathmath* complaint regarding these Eyewear Manufacturers' and IP Licensors' principal places of business, eighteen of the nineteen entities in the New York area would be subject to the Southern District of New York's subpoena power. Most of them are within the State of New York, and those in New Jersey are within 100 miles of the location where they could be commanded to attend trial. Fed. R. Civ. P. 45(c)(1)(A), (B). Only one—BBGI US, Inc.—appears to have its principal place of business at a location beyond the 100-mile limit established by Rule 45(c)(1)(A).

12. LVMH Moët Hennessy Louis Vuitton SE (France)
13. Christian Dior SE (France)
14. Marcolin, S.p.A. (Italy)
15. Thélios S.p.A. (Italy)

<u>New York Area</u>

1. BBGI US, Inc. (Connecticut)
2. Brunello Cucinelli, USA, Inc. (New York)
3. Bulgari Corporation of America (New York)
4. Burberry Limited (New York)
5. Chanel, Inc. (New York)
6. Dolce & Gabbana USA Inc. (New York)
7. Versace USA, Inc. (New York)
8. Giorgio Armani Corporation (New York)
9. Michael Kors (USA), Inc. (New York)
10. Prada USA Corporation (New York)
11. Ralph Lauren Corporation (New York)
12. Tapestry, Inc (New York)
13. Tiffany & Co. (New York)
14. Tory Burch LLC (New York)
15. Kering Eyewear USA, Inc. (New Jersey)
16. LVMH Moët Hennessy Louis Vuitton Inc. (New York)
17. Christian Dior, Inc. (New York)
18. Marcolin U.S.A. Eyewear Corp. (New Jersey)
19. Thelios USA Inc. (New Jersey)

## DISCUSSION

## I.  **Legal Standard**

"For the convenience of parties and witnesses, in the interests of justice, a district court may transfer any civil action to any other district . . . where it might have been brought. . . ."[4] 28 U.S.C. § 1404(a). In deciding whether to transfer an action under this section, district courts exercise considerable discretion. *Terra Int'l, Inc. v. Miss. Chem.*

---

[4] The parties agree that the Southern District of New York is a district in which this action "might have been brought." The Court agrees and finds that further discussion of that aspect of the § 1404(a) analysis is unnecessary.

*Corp.*, 119 F.3d 688, 697 (8th Cir. 1997) ("much discretion"). The statute's purpose is to "prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack*, 376 U.S. 612, 634 (1964). Transfer motions are not granted as a matter of course, and it is the movant's burden to show that the relevant factors make the requested forum more convenient than the forum in which the case was filed. *See In re Nine Mile Ltd.*, 692 F.2d 56, 61 (8th Cir. 1982), *abrogation on other grounds recognized by Mo. Housing Dev. Comm'n v. Brice*, 919 F.2d 1306 (8th Cir. 1990); *Cosmetic Warriors Ltd. v. Abrahamson*, 723 F. Supp. 2d 1102, 1105 (D. Minn. 2010).

There is no "'exhaustive list'" of factors for courts to consider in deciding whether to transfer a case, "but courts should weigh any 'case-specific factors' relevant to convenience and fairness to determine whether transfer is warranted." *In re Apple, Inc.*, 602 F.3d 909, 912 (8th Cir. 2010) (per curiam) (quoting *Terra Int'l*, 119 F.3d at 691, and *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)). The Eighth Circuit has identified "three general categories of factors that courts must consider when deciding a motion to transfer: (1) the convenience of the parties, (2) the convenience of the witnesses, and (3) the interests of justice." *Terra Int'l*, 119 F.3d at 691. "[T]he moving party must show that the balance of these factors strongly favors transfer." *Luckey v. Alside, Inc.*, No. 15-cv-2512 (JRT/JSM), 2016 WL 1559569, at *4 (D. Minn. Apr. 18, 2016). But a district court is not limited to this list in assessing a transfer motion. *Terra Int'l*, 119 F.3d at 691. And a court can look beyond the pleadings in ruling on a motion to transfer. *Li-Bachar v.*

*Johnson & Johnson*, 2022 WL 117094600, at \*2 (D. Minn. Nov. 21, 2022); *Anderson*

*Trucking Servs., Inc. v. Hadland*, 2023 WL 1477635, at \*2 (D. Minn. Feb. 2, 2023).

## II.    Balance of Conveniences

The balance-of-conveniences inquiry includes "(1) the convenience of the parties,

(2) the convenience of the witnesses . . ., (3) the accessibility of records and documents,

(4) the location where the conduct complained of occurred, and (5) the applicability of

each forum state's substantive law."[5] *Terra Int'l*, 119 F.3d at 696.

### A.    Convenience of the Parties

"'In assessing the relative convenience of the parties, the logical starting point is a

consideration of the parties' residences in relation to the district court chosen by the

plaintiff and the proposed transferee district.'" *Guiette v. U.S. Bank Nat'l Ass'n*, No. 17-

cv-1859 (DWF/DTS), 2017 WL 6001738, at \*3 (D. Minn. Dec. 4, 2017) (cleaned up)

(quoting *CBS Interactive Inc. v. Nat'l Football League Players Ass'n, Inc.*, 259 F.R.D. 398,

409 (D. Minn. 2009)). Courts are often faced with plaintiffs who have filed in a district

close to home fighting to stay there and defendants arguing that litigating closer to their

own base of operations is more convenient. *See, e.g.*, *Klatte v. Buckman, Buckman, & Reid,*

*Inc.*, 995 F. Supp. 2d 951 (D. Minn. 2014) (New Jersey based defendant a and Minnesota-

based investor plaintiffs each arguing that their own district is more convenient); *Bae Sys.*

*Land & Armaments L.P. v. Ibis Tek, LLC*, 124 F. Supp. 3d 878 (D. Minn. 2015) (finding

---

[5] The applicability of each forum's substantive law is not a significant consideration in this
proceeding, which overwhelmingly will concern application of federal antitrust laws. And when
pressed during the hearing, neither side identified meaningful differences in how those statutes are
interpreted in the Second and Eighth Circuits.

convenience of parties relatively neutral because it is more convenient for each party to litigate in its own home forum). And if the result of such a transfer would simply be to shift the inconvenience from one party to another, this factor does not favor transfer. *Terra Int'l*, 119 F.3d at 696–97 (explaining that "shifting the inconvenience from one side to the other . . . obviously is not a permissible justification for a change of venue").

This case only bears partial resemblance to that classic pattern. There are six individual Minnesota plaintiffs asking the Court to keep this case in Minnesota. For them, when the case calls upon them to appear in person, the District of Minnesota will be the most convenient forum. But that is not the whole story on the Plaintiffs' side of the "v." Forty percent of the Plaintiffs do not live in Minnesota. Rozo, Ristau, Ringgold, and Fathmath live hundreds of miles away in California and in New York. When they will be called upon to attend court proceedings in person, the District of Minnesota is *not* going to be a convenient forum for them. *See Milham v. White*, No. 15-cv-3333 (ADM/LIB), 2016 WL 3030238, at *2 (D. Minn. May 26, 2016) (recognizing that litigating in Minnesota would be inconvenient for a Michigan plaintiff despite the plaintiff's decision to sue in the District of Minnesota). Meanwhile, for two of the named Plaintiffs, Ringgold and Ristau, one of whom (Ms. Ringgold) is the only named class representative for the putative nationwide class of Indirect Purchasers, the Southern District of New York is rather obviously a *more convenient* forum than the District of Minnesota.

The District of Minnesota is not a convenient forum for Defendants, and the record supports their position that the Southern District of New York is more convenient for them. Minnesota is not home to any of the Defendants. None of the Defendants' own witnesses

are located here. It is true that, judging by their proximity to the respective fora alone, keeping the case in the District of Minnesota would require some of the Defendants' personnel, like those in California and Texas,[6] to travel fewer miles than if they had to fly to New York. And while the Court recognizes that Minnesota has an international airport with a hub for a major airline, there is no question that there are far more options for convenient and regular travel to New York for the European Defendants.

Practically speaking, the Court is compelled to observe that the realities of modern litigation make certain aspects of this convenience analysis feel somewhat outdated. Much of this litigation is likely to be conducted via electronic discovery, which can be exchanged and reviewed without lawyers ever having to leave their own offices. *See Doe v. Epic Games, Inc.*, 435 F. Supp. 3d 1024, 1042 (N.D. Cal. 2020) ("In the age of electronically stored information, the ease of access to evidence is neutral because much of the evidence in this case will be electronic documents, which are relatively easy to obtain in any district.") (internal quotation omitted). However, to the extent that the location of any party's physical documents comes into play, the overwhelming majority of paper discovery in a case of this nature is going to involve the Defendants' documents. *See Terra Int'l*, 119 F.3d at 696 (indicating that the "accessibility of records and documents" is an appropriate consideration in balancing convenience considerations). And there is no indication that any real volume of documents is likely to be in Minnesota. Meanwhile, Defendants have

---

[6] Although Plaintiffs suggest that a Minnesota forum is more convenient for the Defendants located in Ohio, by sheer distance alone, that is not entirely clear. The city of Mason, Ohio, which is alleged to be the location of the principal places of business for Defendants Luxottica of America, Inc. and Eye Med Vision Care, LLC, is closer to New York City than it is to Minneapolis.

shown, through the Lee Declaration, that EssilorLuxottica USA Inc. has its principal place of business in New York, and that other Defendants have their primary marketing, strategy, and retail sales operations in New York. Thus, "if the need arises to refer to original documents or evidence in the litigation, [New York] would prove more convenient." *In re Apple*, 602 F.3d at 914.

It is also worth pointing out that a transfer of this litigation to the Southern District of New York will not greatly shift inconvenience to the Plaintiffs who live in California and Minnesota. This is so because the practical realities of litigation make it very unlikely that Ms. Morgan, Ms. Jonas, Mr. Hoag, Ms. Froehlich, Ms. Foster, Mr. Brown, Mr. Rozo, or Ms. Fathmath are going to have to travel to personally attend court proceedings on more than a few occasions. Regardless of where the case is venued, their depositions are going to be conducted close to their homes. They are not going to have to travel to appear in court for motion practice.[7] Their in-person attendance may be required for important mediation sessions. And if this case ultimately goes to trial, they will need to appear to testify in person.[8]

---

[7] Relocating the case to the Southern District of New York may require Plaintiffs' counsel to engage in more frequent travel, but cases observe that counsel's convenience is not a significant part of the balance-of-convenience factors. *Guiette v. U.S. Bank Nat'l Assoc.*, No. 17-cv-1859 (DWF/DTS), 2017 WL 6001738, at *3 (D. Minn. Dec. 4, 2017) (indicating that "[c]ounsel's convenience should not be weighed"); *Austin v. Nestle USA, Inc.*, 677 F. Supp. 1134, 1137 n.3 (D. Minn. 2009) (same); *United States v. Vision Quest Indus., Inc.*, No. 20-cv-2365 (MJD/KMM), 2021 WL 2143138 (D. Minn. May 26, 2021) (same).

[8] Nothing before the Court suggests that the named Minnesota and California Plaintiffs lack the ability to bear the expenses of the limited travel to New York that will likely be required of them in this case. *Bae Sys. Land & Armaments L.P. v. Ibis Tek, LLC*, 124 F. Supp. 3d 878, 885 (D. Minn. 2015) ("A court may consider a party's ability to bear such expenses, i.e., a substantiated claim of financial hardship, in weighing this factor.").

In sum, the convenience-of-the parties factor in this case is complex, but overall it favors transfer to the Southern District of New York. The District of Minnesota is a convenient forum for six of the named Plaintiffs, but it is inconvenient for the other four. The Southern District of New York is a more convenient forum for two of the named Plaintiffs, for at least some of the Defendants that are in the United States, and for all of the Defendants that are based in Europe.

## B. Convenience of Witnesses

The balance-of-conveniences inquiry includes consideration of the convenience of the witnesses. *Terra Int'l*, 119 F.3d at 696; *In re Apple*, 602 F.3d at 913–14 (discussing party and non-party witness convenience). "The convenience of the witnesses is an important factor because it determines the relative ease of access to sources of proof." *Toomey v. Dahl*, 63 F. Supp. 3d 982, 993 (D. Minn. 2014) (quotation omitted).

When looking at the convenience of witnesses, courts distinguish between party witnesses and non-party witnesses. Courts generally assume that witnesses who are within a party's control, such as employees, will appear voluntarily, even in a distant forum. *Bae Sys. Land & Armaments L.P. v. Ibis Tek, LLC*, 124 F. Supp. 3d 878, 885 (D. Minn. 2015); *Klatte v. Buckman, Buckman & Reid, Inc.*, 995 F. Supp. 2d 951, 955 (D. Minn. 2014). Here, aside from the fact that the Minnesota Plaintiffs will themselves be witnesses, neither side suggests that this factor strongly impacts the transfer analysis.

Instead, the focus in this dispute is on non-party witnesses. Convenience of non-party witnesses is an important factor in the transfer analysis. *Bae Sys. Land & Armaments*, 124 F. Supp. 3d at 885–86. Indeed, courts often refer to it as the "most important factor

15

when deciding whether to transfer venue." *Li-Bachar v. Johnson & Johnson*, No. 22-cv-0485 (WMW/DJF), 2022 WL 17094600, at *3 (D. Minn. Nov. 21, 2022). Courts require the proponent of transfer to identify who the non-party witnesses are, what the substance of their proposed testimony will be, and explain how that testimony is relevant and material to the litigation. *Klatte*, 995 F. Supp. 2d at 955, 956; *Bay Sys. Land & Armaments*, 124 F. Supp. 3d at 885, 887. Courts then "determine [the witnesses'] accessibility and convenience to the forum." *Klatte*, 995 F. Supp. 2d at 955 (quoting *Reid-Walen v. Hansen*, 933 F.2d 1390, 1396 (8th Cir. 1991)).

Defendants argue that the convenience of the non-party IP Licensors and Eyewear Manufacturers weighs heavily in the analysis in this case. They assert that third-party discovery from these entities is "extremely likely" and argue they have material and important information for this litigation concerning "the negotiation and terms of the licensing and sales agreements." And Defendants have shown that nineteen of the thirty-four IP Licensors and Eyewear Manufacturers are located in the New York area. Defs.' Mem. 10 (Doc. 81). Further, Defendants contend that none of these non-party witnesses will be subject to this Court's subpoena power, but several could be compelled to testify at trial by the Southern District of New York. Defs.' Reply 7–8, 8–9 (Doc. 108). At oral argument, Defendants further asserted that high-level executives of these non-parties might

be reluctant to take time out of their schedules to voluntarily travel to Minnesota to testify at a trial in this case, making compulsory process essential.[9]

Plaintiffs counter that the Court should not solely consider the convenience of the IP Licensors and Eyewear Manufacturers identified by the Defendants. They contend that these cases involve allegations that "Defendants impose price controls on their proprietary brands through distribution agreements with third-party sellers" who will also have information relevant to Plaintiffs' claims. They assert that "those entities are scattered throughout the United States, making centrally located Minnesota equally or more convenient than coastal New York." DPP Opp'n 9–10 (Doc. 97). However, Plaintiffs have not identified who these third-party sellers are nor where they are located, so even if the Court could infer that they are "myriad and geographically dispersed," *id.* at 10 n.9, the Court could do nothing more than speculate about the relative convenience of this forum versus the Southern District of New York to these other possible witnesses.

The primary consideration in this context is whether the non-party witnesses will be accessible for *trial testimony*, and the preference is for that testimony to be given, where possible, in person. *Austin v. Nestle USA, Inc.*, 677 F. Supp. 2d 1134, 1139 (D. Minn. 2009) (explaining that "[t]rial by videotape is simply not preferable to live examination in front

---

[9] Defendants' initial focus on taking third-party discovery from the identified non-party witnesses was a curious tactic, and not a very persuasive one. Any discovery subpoena, whether a command to attend a deposition or for production of documents, could not require them to go far from their home bases because of the geographical limits imposed by Fed. R. Civ. P. 45(c), regardless of where the case is venued. And discovery can, of course, be conducted electronically. So, the likelihood of third-party discovery from these businesses does not readily demonstrate that the Southern District of New York is a more convenient forum. Nevertheless, the focus in the caselaw is on witness availability for trial testimony, and the Court places greatest emphasis on that consideration.

of a jury") (quoting *In re Aredia & Zometa Prods. Liab. Litig.*, No. 3:06–MD–1760, 2008 WL 686213, at *3 (M.D. Tenn. Mar. 6, 2008)); *see also Kay v. Nat'l City Mortgage Co.*, 494 F. Supp. 2d 845, 853 (S.D. Ohio 2007); *Hoppe v. G.D. Searle & Co.*, 683 F. Supp. 1271, 1276 (D. Minn. 1988) ("Forcing the defendant to conduct its case by deposition, even videotape deposition, is simply unjustified."). Even with technological advances fomented by the pandemic, courts and litigators alike recognized the value of live witness testimony over recorded or video-conference appearances.

Based on the record before the Court, it is apparent that the IP Licensors and Eyewear Manufacturers are going to have material and important information to provide in this case. They will either provide testimony that supports Plaintiffs' theory of the case, or they will, as Defendants anticipate, discuss the pro-competitive benefits of the agreements at issue to their businesses. The Direct Purchaser Plaintiffs minimize the importance of these non-party witnesses, arguing that the "focus of this litigation will be Defendants' misconduct, and Plaintiffs anticipate proving their case primarily through Defendants' own witnesses and business records." DPP Opp'n 8–9. But this argument is unpersuasive where these entities have been specifically identified by name and were even named as defendants in one of the cases at an earlier stage.

Because Defendants have identified relevant non-party witnesses and shown that they will likely provide material and important information, the Court must now "determine [the witnesses'] accessibility and convenience to the forum." *Klatte*, 995 F. Supp. 2d at 955 (quoting *Reid-Walen*, 933 F.2d at 1396). None of the IP Licensors or Eyewear Manufacturers will be subject to the subpoena power of the District of Minnesota

since they are all either located in Europe or are outside of the geographic limits imposed by Rule 45. Fed. R. Civ.P. 45(c)(1)(A) ("A subpoena may command a person to attend a trial, hearing, or deposition only . . . within 100 miles of where the person resides, is employed, or regularly transacts business in person."). None of the European entities are going to be subject to the subpoena power of the Southern District of New York either. However, eighteen of the IP Licensors and Eyewear Manufacturers could be compelled by subpoena to appear in the Southern District of New York to provide live testimony at trial because they are either based in New York or are otherwise within Rule 45(c)(1)(A)'s 100-mile reach. *See Austin v. Nestle USA, Inc.*, 677 F. Supp. 2d 1134, 1138–39 (D. Minn. 2009) (where non-party witnesses with important information were located in South Carolina, ability to bring those witnesses into court via subpoena power outweighed plaintiff's choice of Minnesota forum).

Even if the Court were to speculate that some of the IP Licensors and Eyewear Manufacturers might want to appear voluntarily to testify at trial given the nature of the allegations concerning their agreements with defendants, the caselaw presumes only that a party will be able to obtain its own witnesses' voluntary attendance at trial; there is no

comparable assumption regarding non-party witnesses.[10] And although the testimony of non-parties can be obtained by deposition and preserved for trial, the caselaw reflects a strong preference for in-person testimony. *Milham*, 2016 WL 3030238, at *3 ("Relevant considerations under this factor include the number of essential non-party witnesses, their location, and the preference of the court for live testimony as opposed to depositions."). In service of that preference, the law favors transfer to venues where parties can use the command of subpoenas to bring important witnesses to court for trial testimony. *E.g.*, *Klatte*, 995 F. Supp. 2d at 957 ("[G]iven the strong preference for live testimony, . . . litigating in Minnesota presents an obstacle to [the defendant] receiving a fair trial, as several key witnesses are not located within the subpoena power of this Court."); *Austin*, 677 F. Supp. 2d at 1139 (transferring case where plaintiff's physicians with information relevant to causation and damages "could not be compelled to testify at trial if this case

---

[10] Plaintiffs argue that the Court should disregard the convenience of these non-party witnesses because Defendants provided no declaration showing that they would be unwilling to come to the District of Minnesota voluntarily to provide testimony at trial. IPP Opp'n 9 (Doc. 98). And in some instances, courts denying transfer have noted the absence of such an evidentiary showing. *Same Day Surgery Centers, LLC v. Mont. Regional Orthopedics, LLC*, No. 02-cv-1811 (JRT/FLN), 2003 WL 328035, at *1 (D. Minn. Feb. 10, 2003). However, Plaintiffs point to no binding authority suggesting that a party moving for transfer must make such an evidentiary showing to carry its burden. In fact, many cases have found this factor favors transfer without requiring a showing that any non-party witness would be unwilling to voluntarily travel to a distant forum to testify. *Li-Bachar v. Johnson & Johnson*, No. 22-cv-0485 (WMW/DJF), 2022 WL 17094600, at *3 (D. Minn. Nov. 21, 2022); *Guiette*, 2017 WL 6001738, at *4–5; *Milham*, 2016 WL 3030238, at *3; *Klatte*, 995 F. Supp. 2d at 955–56; *Austin*, 677 F. Supp. 2d at 1138–39; *Cosmetic Warriors Ltd.*, 723 F. Supp. 2d at 1106–07 *McCloud v. Lakeville Motor Express, Inc.*, No. 07-cv-1427 (PAM/JSM), 2007 WL 9736076, at *2 (D. Minn. Oct. 1, 2007); *Ahlstrom v. Clarent Corp.*, No. 02-cv-780 (RHK/SRN), 2002 WL 31856386, at *9 n.12 (D. Minn. Dec. 19, 2002).

were to remain" in the District of Minnesota). These considerations favor transfer in this case.

In sum, the convenience of the non-party witnesses, often considered the most important factor, weighs strongly in favor of transfer to the Southern District of New York for the following reasons: the IP Licensors and Eyewear Manufacturers have material and important testimony; none will be subject to the subpoena power of this Court to testify at trial; several will be subject to the subpoena power of the Southern District of New York; and for those that are not subject to the Southern District of New York's subpoena power (namely the non-party witnesses located in Europe)[11] the Southern District of New York is a more convenient location for them to travel to if they are willing to voluntarily travel to a trial to provide testimony.

## C. Location of Relevant Conduct

The location where the conduct at issue in the complaints occurred is also a consideration in the balance of conveniences. *Terra Int'l*, 119 F.3d at 696; *see also In re Apple*, 602 F.3d at 913 (noting that "none of Apple's alleged abusive litigation relates to Western Arkansas"). "[I]t is generally appropriate to transfer an action to the district that is the locus of operative facts." *Cosmetic Warriors*, 723 F. Supp. 2d at 1108.

Defendants assert that "[c]oupled with the fact that nineteen of the IP Licensors and Eyewear Manufacturers are located in the New York area, Defendants' ties to New York

---

[11] *Li-Bachar*, 2022 WL 17094600, at *3 (observing that Michigan forum was more convenient for non-party witnesses—Michigan plaintiff's Canadian primary care physicians—to travel to than Minnesota).

mean that, if there is a 'locus of operative facts' in the U.S., it is the Southern District of New York." Def.'s Mem. 14 (Doc. 81). Plaintiffs argue that the alleged conduct does have a connection to Minnesota becase "[m]ore than half of the Plaintiffs are Minnesotans who were directly injured by Defendants' anticompetitive conduct, which has impacted many thousands of other Minnesotans as well." Direct Purchase Pls.' Opp'n 3 (Doc. 97).

In essence, Defendants say the focus of this inquiry should be on where the alleged unlawful conduct occurred, while Plaintiffs point to one of the places where its effects were felt. Defendants have the better of this argument for two reasons. First, courts generally focus on the locus of the allegedly unlawful conduct rather than the place where a plaintiff felt its effects, and that is true in antitrust cases as well. *United HealthCare Servs., Inc. v. Celgene Corp.*, No. 20-cv-686, 2020 WL 7074626, at *4 (D. Minn. Dec. 3, 2020) ("Although [plaintiffs] engaged in activity in Minnesota relating to their claims— principally making unlawfully inflated payments due to [defendant's] monopolistic conduct—the complaint centers on [defendant's] conduct, which occurred in New Jersey."); *Associated Wholesale Grocers, Inc. v. Koch Foods,* Inc., No. 18-2258-DDC-KGG, 2018 WL 4361188, at *5 (D. Kan. Sept. 13, 2018) ("[C]ourts have held that the locus of operative facts in an antitrust action is where the defendants allegedly conspired or colluded to violate the antitrust laws.") (citing cases); *see also Huhn v. U.S. Citizenship & Immigr. Servs.*, No. 20-cv-2383, 2021 WL 6841639, at *4 (D. Minn. May 6, 2021) ("Although plaintiffs allege injury in Minnesota, defendants' decision making regarding the implementation of national rules and policies occurred in Washington, D.C.").

Here, Plaintiffs point to no allegations that the alleged anticompetitive agreements were negotiated or executed in Minnesota. Although Plaintiffs argue that they "do not allege—and Defendants do not claim—that the Southern District of New York is where the anticompetitive agreements were entered," DPP Opp'n 14, they overlook the fact that the complaints allege that Defendants entered several of the allegedly anticompetitive agreements with IP Licensors and Eyewear Manufacturers, nineteen of which are in the New York area. These entities were originally included as defendants in the first *Fathmath* complaint and are treated in the pleadings as co-conspirators. Such details point toward the Southern District of New York as a more likely location for the alleged anti-competitive to have occurred than Minnesota.

Second, even focusing on the place where the alleged injury was felt as Plaintiffs ask the Court to do, they ignore the fact that four of them are not Minnesota residents. They also do not argue that within their putative nationwide Direct Purchaser and Indirect Purchaser classes, Minnesotans somehow experienced the alleged anticompetitive injuries in greater numbers or more acutely than the residents of any other state, including California and New York where Ristau, Ringgold, Rozo, and Fathmath reside. Indeed, if the question in a nationwide class action case were where most potential class-members live, a less populous state like Minnesota is likely far down the list.

Weighing this factor in the analysis certainly does not point to Minnesota as a convenient forum for the litigation. Given the fact that Defendants are located throughout the United States and Europe, the record here does not establish that the locus of operative fact is certainly New York. But the allegations of unlawful agreements entered by the

Defendants with multiple non-parties that are located in New York and the surrounding area support a conclusion that the Southern District of New York is a more appropriate forum than this one.

## III.    Interests of Justice

When evaluating the interests of justice, courts consider judicial economy, the plaintiff's chosen forum, the costs to the parties of litigating in either forum, the ability to enforce a judgment, barriers to a fair trial, any issues with conflict of law, and advantages of having local courts determine local law. *See Terra Int'l*, 119 F.3d at 696; *Klatte v. Buckman, Buckman & Reid, Inc.*, 995 F. Supp. 2d 951, 957 (D. Minn. 2014).

### A. Plaintiff's Choice of Forum

The Court begins its interests-of-justice analysis with the Plaintiffs' choice of forum, a factor often given deference in the transfer calculus. *In re Apple*, 602 F.3d at 913; *Terra Int'l*, 119 F.3d at 695 ("In general, federal courts give considerable deference to a plaintiff's choice of forum. . . ."). "This 'general' practice of according deference, however, is based on an assumption that the plaintiff's choice will be a convenient one." *In re Apple, Inc.*, 602 F.3d at 913. Courts afford "'substantially less deference'" to a plaintiff's choice of a forum when the plaintiff chooses a forum away from her home. *Id.* (quoting *De Melo v. Lederle Labs.*, 801 F.2d 1058, 1062 n.4 (8th Cir. 1986)). This diminished deference is because it is "much less reasonable" to assume that the plaintiff has chosen the forum for convenience and "the risk that the plaintiff chose the forum to take advantage of favorable law or to harass the defendant increases." *Id.* (internal quotations and citations omitted). Courts also provide less deference to the plaintiff's

choice of forum when the plaintiff does not sue where the conduct complained of occurred and when the case involves a nationwide class action. *Lyman v. Gas Gathering Specialists, Inc.*, No. 21-cv-2386 (KMM/ECW), 2022 WL 1639553, at *2 (D. Minn. May 24, 2022) (citing *Nelson v. Soo Line R. Co.*, 58 F. Supp. 2d 1023, 1026 (D. Minn. 1999) and *Guiette*, 2017 WL 6001738, at *6)).

In some respects, the circumstances of this case are not as simple as many of the cases cited by the parties. Plaintiffs focus almost exclusively on the fact that there are Minnesota residents among them that have chosen to sue in a Minnesota forum. But that is not the whole story because there are California and New York residents who have chosen to sue in a forum that the Court cannot reasonably assume is convenient for them. Moreover, all of the Plaintiffs have brought suit in a forum that is not the location where the unlawful conduct complained of occurred, even if it is where some of the Plaintiffs allegedly suffered injury. And all of the Plaintiffs bring their cases as putative nationwide class actions.

The Court finds that the usual deference afforded to the Minnesota Plaintiffs' choice of a Minnesota forum is diminished because these are putative nationwide class actions where the unlawful conduct alleged has no particular connection to Minnesota. And for the California and New York Plaintiffs, their choice of a Minnesota forum is entitled to less weight because they have elected to re-file their cases in a location that is not a convenient forum. While they correctly point out that "less deference" is not the same as "no deference," they too have brought their cases as putative nationwide class actions in a place untethered to the location of any alleged unlawful conduct by the Defendants.

There is nothing before the Court demonstrating that Plaintiffs coordinated the filing of their cases here to "harass the defendant[s]." *In re Apple*, 602 F.3d at 913. At oral argument, counsel for neither side identified any aspect of antitrust law within the Eighth Circuit that would clearly indicate Plaintiffs selected this forum "to take advantage of favorable law." *Id.* But the coordinated dismissal of the IP Licensors and Eyewear Manufacturers from the *Fathmath* complaint in response to Defendants' efforts to centralize the litigation in the Southern District of New York gives the Court some pause. If that action does not outright suggest forum shopping, it suggests that the true purpose behind the Plaintiffs' unified choice of a Minnesota forum is not based entirely on even the Plaintiffs' assessment of convenience and the interests of justice, but perhaps because of some other perceived advantage in litigating here.

In sum, the Court finds that Plaintiffs' choice of the District of Minnesota as the forum for this litigation is entitled to little deference given the unique facts of this case, and the weight it deserves in this analysis is insufficient to counter the other factors that weigh in favor of transfer.

## B. Judicial Economy

Plaintiffs suggest that judicial economy weighs in favor of the District of Minnesota because "docket conditions" here are more favorable than in the Southern District of New York. They point to statistics indicating that cases are brought to trial faster here on average than in the Southern District of New York, and they note that the Southern District of New York has more MDLs than are located here. Defendants point to a different statistic—that the Southern District of New York is faster to get to "disposition" after the filing of a civil

case than the District of Minnesota. Defendants also note that the Southern District of New York has more active district judges than the District of Minnesota, and the ratio of MDLs to active judges is actually more favorable in the Southern District of New York than here.

Of course, "[d]ocket congestion is a permissible factor to consider in deciding a § 1404(a) motion." *In re Apple*, 602 F.3d at 915. However, on this record, the Court can do nothing more than speculate on whether this Court or the Southern District of New York would provide a swifter disposition or get this case to a trial more quickly. *Id.* (explaining that "[w]hether one court would move any case to trial faster is 'speculative'" and "case-disposition statistics may not always tell the whole story."). The docket-condition statistics cited by the parties do not tip the analysis in one direction or another in any significant way.

Courts also consider whether transfer would result in a waste of judicial resources or waste of the parties' time and effort based on the stage of the proceedings. *Guiette*, 2017 WL 6001738, at *6 (citing *Cont'l Research Corp. v. Drummond Am. Corp.*, No.4:07-cv-1155 CDP, 2007 WL 4287873, at *5 (E.D. Mo. Dec. 6, 2007). This case remains in its early phases. So far, United States Magistrate Judge John Docherty has granted the Plaintiffs' motion for consolidation and appointed interim co-lead counsel for the Plaintiffs. The undersigned has heard argument and considered only the motion to transfer venue. A transfer will not, therefore, result in a waste of judicial resources. *Vision Quest Indus.*, 2021 WL 2143138, at *5 ("This case has not yet progressed far in this Court, so there will be no waste of judicial resources by transferring the matter to the Central District of California."). As for the parties, they have not devoted significant resources to this case

at this stage, especially when considered in relationship to the significant undertaking that the overall litigation will involve. Plaintiffs have yet to file a consolidated amended complaint, but interim co-lead counsel have now been appointed. Following transfer, the cases can remain consolidated, lead counsel can remain in place, and the case can move forward in the transferee district with relative ease.

### C. Other Factors

Turning to the remaining interests-of-justice factors, the Court finds that they are largely neutral. Considerations of conflict of laws and local courts determining issues of local law do not weigh heavily in the analysis in this case and, therefore, they neither favor nor disfavor transfer. Similarly, Defendants make no argument that the comparative costs to the parties of litigating in each forum weighs in favor of transfer.

Although Defendants have not raised this argument specifically in the context of the interests of justice, the Court observes that there is overlap between the availability of critical non-party witnesses and whether there are barriers to a fair trial. Because there is a strong preference for live trial testimony, litigating in a forum where critical non-party witnesses could not be subpoenaed to testify "presents an obstacle to [a party] receiving a fair trial." *Klatte*, 995 F. Supp. 2d at 957. For the same reasons discussed above that the convenience-of-witnesses factor weighs in favor transfer, the Court finds that the fact that several of the IP Licensors and Eyewear Manufacturers could be subpoenaed by the Southern District of New York also favors transfer in the interests of justice.

## IV.    Conclusion

In sum, the District of Minnesota is convenient to some of the Plaintiffs, but inconvenient to others. For two of the named Plaintiffs, the Southern District of New York is a *more convenient* forum than the District of Minnesota. And Defendants have shown that New York provides a more convenient forum for them, while transferring to the Southern District of New York will not drastically increase the inconvenience to those Plaintiffs. The convenience of non-party witnesses weighs heavily in favor of transfer in this case because there are several identified non-parties who have material and important testimony that could not be compelled to provide live trial testimony in the District of Minnesota, but who would be subject to the subpoena power of the Southern District of New York. Plaintiffs' choice of a Minnesota forum is entitled to relatively little deference under the circumstances of this case, and while their efforts at cooperating and coordinating the litigation into a single district are admirable, the manner in which they did so does not suggest that the District of Minnesota was chosen for convenience. Finally, considerations of judicial economy do not suggest that transfer will waste judicial or party resources, and the fact that Defendants would be deprived of live trial testimony of several key non-party witnesses would present an obstacle to a fair trial. For all these reasons, the Court finds that transfer of this case to the Southern District of New York is appropriate.

## ORDER

**IT IS HEREBY ORDERED THAT** Defendants' Motion to Transfer Venue (Doc. 79) is **GRANTED**. The Clerk of Court is directed to transfer this action to the Southern District of New York pursuant to 28 U.S.C. § 1404(a).

29

Date: June 12, 2024

*s/Katherine Menendez*
Katherine Menendez
United States District Judge